

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4027
Re: What is the difference between
a transfer "to secure the fu-
ture payment of money" which
is apparently made taxable
under the Texas Stock Transfer
law and the exemption of "an
agreement evidencing the de-
posit of certificates as col-
lateral security for money
loaned thereon"?

We are in receipt of your letter in which you re-
quest the opinion of this department on the question set out
therein as follows:

"I would appreciate your official opinion
on the following question which has been raised
by the National Association of Securities Dealers,
Inc., District Committee No. 6, pertaining to
Article 15, of House Bill 8, this being the Stock
Transfer Tax Law:

"What is the difference between a
transfer 'to secure the future payment
of money or the future transfer of any
such stock', which is apparently made
taxable under the act, and the exemption
of 'an agreement evidencing the deposit
of certificates as collateral security
for money loaned thereon'?"

Section 1 of Article 15 of House Bill 8, Acts of
the 47th Legislature, Regular Session, commonly called the
Texas Stock Transfer Tax Law, reads in part as follows:

"Section 1. There is hereby imposed and
levied a tax as hereinafter provided on all sales,

Honorable George H. Sheppard, Page 2

agreements to sell, or memoranda of sales, and all deliveries or transfers of shares, or certificates of stock, or certificates for rights to stock, or certificates of deposit representing an interest in or representing certificates made taxable under this Section in any domestic or foreign association, company, or corporation, or certificates of interest in any business conducted by trustee or trustees made after the effective date hereof, whether made upon or shown by the books of the association, company, corporation, or trustee, or by any assignment in blank or by any delivery of any papers or agreement or memorandum or other evidence of sale of transfer or order for or agreement to buy, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to such stock or other certificate taxable hereunder, or with the possession or use thereof for any purpose, or to secure the future payment of money or the future transfer of any such stock, or certificate, . . ." (Underlining ours)

In order to answer the question you ask it is first necessary to consider the portion of the tax statute above quoted which taxes transfers made to secure the future payment of money. In order to do so it is necessary to understand the particular type of tax levy under consideration. In opinion No. 0-3594, this department construed the nature of the Texas Stock Transfer Tax and stated as follows:

". . . It should be ever kept in mind that the tax levy under consideration is, actually and fundamentally, an excise tax upon the privilege of transferring shares or certificates of stock. The term 'transfer' is used here in its broad and comprehensive sense to mean the passing of the legal or equitable title to shares or certificates of stock from one person to another, by sale or gift, rather than the narrower meaning of the mere recording of such transfer upon the stock transfer records of the corporation. . . ." (Underlining ours)

In any event before a tax becomes due there must be a transfer as that term is broadly defined in its various phases

Honorable George H. Sheppard, Page 3

in Section 1, supra. There must be a passing of the legal or equitable title in shares of stock from one person to another by one of the various means specifically enumerated in said Section.

The Court of Appeals of New York in the case of Phelps' Stokes Estate vs. Nixon, 118 N. E. 241, considered the tax levying section of the New York Stock Transfer Tax, being Section 270 of the New York Tax Law, which Section is for all purposes of this discussion identical with the tax levying section of the Texas act, and the Court stated in discussing the type of transfer necessary in order for a tax to become due on the particular transaction as follows:

". . . It is such a transfer as is referred to in section 162 of the Personal Property Law. A transfer is defined in the Century Dictionary as:

"'The conveyance of right, title or property, either real or personal, from one person to another, either by sale, by gift or otherwise.'

". . ."

Based on the above discussion, it is the opinion of this department that to come within the term "transfer to secure the future payment of money" as used in the tax levying section of the Texas Stock Transfer Tax Law, it is necessary that there actually be a transfer of either the legal or equitable title in stock from one individual to another. Under the plain wording of this section where such a transfer occurs, it would not be a defense to the payment of the tax that such transfer was made only for the purpose of securing the future payment of money. The crux of the question however is that there must actually be a transfer within the meaning of that term as discussed above from one individual to another regardless of for what purpose such transfer is made.

Section 1 of Article 15, supra, also contains the following exemption from the tax statute:

". . . It is not intended by this Article to impose a tax upon an agreement evidencing the

Honorable George H. Sheppard, Page 4

deposit of certificates as collateral security for money loaned thereon, <u>which certificates are not actually sold</u>, nor upon such certificates so deposited, nor upon transfers of such certificates to the lender or to a nominee of the lender or from one nominee of the lender to another, provided the same continue to be held by such lender or nominee or nominees as collateral security as aforesaid, nor upon the retransfer of such certificates to the borrower, . . ." (Underlining ours)

The above quoted exemption of the Texas Stock Transfer Tax Law is identical word for word with the same exemption contained in Section 270 of the New York Stock Transfer Tax Law. Apparently the words in said exemption which distinguish it from a transfer made taxable are the words "which certificates are not actually sold".

In discussing the above mentioned exemption, the Attorney General of New York in an opinion dated September 10, 1940, stated as follows:

". . .—A transaction <u>involving no sale</u> of a stock certificate but a mere transfer and deposit thereof as collateral security in the name of the lender's nominee who endorses the certificate and leaves it with the lender does not constitute a taxable transaction. Upon the default of the borrower and bidding in of the stock by the lender, a stock transfer tax is due. Another stock transfer tax is due when such stock is later sold by the bank. (1940) Op. Atty. Gen., December 10." (Underlining ours)

The Federal Stock Transfer Tax is Section 1802 of Title 26 of the United States Code Annotated. Said law contains a similar exemption to the one discussed herein which reads as follows:

". . . <u>Provided further</u>, That it is not intended by this chapter to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, <u>which certificates are not actually sold</u>, nor upon

Honorable George H. Sheppard, Page 5

the delivery or transfer for such purpose of cer-
tificates so deposited nor upon the return of stock
loaned: . . ." (Second underlining ours)

This exemption was discussed in the case of Dean
vs. Caldwell & Company, 9 Fed. Sup. 177. The Court stated
as follows:

". . . If Caldwell & Co. should sell some
of the securities pledged to the Bank of Tennessee,
prior to the payment of the indebtedness for which
they were pledged, it would take them down and sub-
stitute other securities. Maybe there would be a
number of substitutions of securities in this man-
ner before the indebtedness was entirely wiped out.
The transaction was never considered a sale.

". . ." (Underlining ours)

The last sentence used by the Court is the one which is the
most relevant to the question discussed herein. The Court
stated that the transaction was never considered a sale. On
the other hand the Court considers the entire transaction as
the pledge or as the deposit of securities with no transfer
of any interest or title in said securities to another indi-
vidual. This seems to be the distinction made by this Federal
Court considering the same exemption to the Federal Stock
Transfer Tax Law.

We also call your attention to the fact that the
Massachusetts Stock Transfer Tax Law and the Pennsylvania
Stock Transfer Tax Law contain exemptions almost identical
with the one discussed in this question and in each case the
pertinent feature of the exemption seems to be that the shares
of stock are merely deposited as collateral security and are
never actually sold.

It is the opinion of this department, therefore,
that in the case where an actual transfer of either the legal
or equitable interests in shares of stock within the meaning
of the Texas Stock Transfer Tax Law takes place from one in-
dividual to another for the purposes of securing the future
payment of money, such transfers would be subject to the
Texas Stock Transfer Tax. However, where no such taxable
transfer occurs but the stocks are merely deposited as col-
lateral security for money loaned, we are of the opinion

Honorable George H. Sheppard, Page 6

that such deposit or agreement or memorandum made in connection therewith would not be subject to the Texas Stock Transfer Tax but would come within the exemption discussed above.

We trust that the foregoing is sufficient to enlighten you in this matter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED OCT 27, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By Billy Goldberg

Billy Goldberg
Assistant

BG:mp

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN